UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    EARL E. KRUPP,                                    Case No. 09-36710-dof
                                                                 Chapter 7 Proceeding
                                                                 Hon. Daniel S. Opperman

        Debtor.
_____/
RONALD A. DECIERO and CATHERINE DECIERO,

        Plaintiffs,

v.                                                                 Adversary Proceeding
                                                                  Case No. 10-3181-dof

EARL E. KRUPP,

        Defendant.
_____/

## OPINION DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Plaintiffs, judgment creditors of the Debtor, seek a determination that this judgment is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6) for liability arising from the Defendant's sale of a defective motor home. Plaintiffs advance two bases for their nondischargeability action: (1) that judgments rendered in previous state court litigation have an issue preclusive effect and necessarily satisfy the requirements of Section 523(a)(2)(A) and (a)(6); and (2) that the facts underlying the state court action necessarily satisfy those same requirements. Both bases are the subject of the Plaintiffs' and the Defendant's cross-motions for summary judgment presently before the Court. For the reasons explained in this Opinion, the Court does not recognize the state court judgments as having an issue preclusive effect in these bankruptcy proceedings and finds that genuine issues of material fact warrant the denial of both motions.

Jurisdiction

As the parties agree, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and, as such, is within the Court's jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

Facts and Procedural History

On or about January 13, 2006, Plaintiffs, Ronald and Catherine DeCiero, purchased a recreational vehicle ("RV") for approximately $100,600 from Krupps Auto Sales via the Internet auction site, eBay. Krupps Auto Sales is located in Lennon, Michigan, and is owned by Earl Krupp, the Debtor in this case (Earl Krupp, individually and d/b/a Krupps Auto Sales, is hereafter identified as "Defendant"). The dealership is also the employer of Defendant's brother, Fred Krupp.

Plaintiffs aver that they purchased the RV with the understanding that the RV's only defects were faulty hydraulic jacks, a cracked windshield, and "normal wear and tear." They claim that they did not learn of substantial defects in the vehicle, and the prior rollover crash that caused them, until after they made their purchase. The prior crash supposedly resulted in the death of one of the RV's occupants and the declaration of its "total loss" by the vehicle's insurer.

Defendant, to the contrary, argues that Plaintiffs were fully aware of the RV's history prior to making their purchase. Not only does Defendant claim that his brother fully disclosed the crash and its effects, but he also advances the argument that Plaintiffs' alleged lack of knowledge is illogical. Per Defendant, the RV's NADA (National Automobile Dealers Association) value exceeds $225,000, and Plaintiff, Ronald DeCiero, supposedly has experience in buying and selling over 100 vehicles. Accordingly, Defendant argues that a person with such extensive experience would not purchase an RV from a dealership for approximately half-price without asking about, and investigating the reason for, the extraordinary low price.

2

Given the conflicting recitations of the facts and the refusal of Defendant and his brother to refund Plaintiffs' purchase money, Plaintiffs sued Defendant and his brother on August 26, 2006, in the Genesee County Circuit Court on a number of legal theories relating to the sale and purchase of the RV. Although the state court complaint was not presented and all of its eight counts are not identified, the Court is aware that on August 28, 2007, the state court granted summary judgment in favor of Defendant and his brother on six of the eight counts ("Summary Judgment"). The state court then proceeded to render a directed verdict in favor of the Plaintiffs in the jury trial conducted April 15-17, 2008, on the remaining two counts ("Directed Verdict"). Specifically, the state court found Defendant and his brother liable for violating the Michigan Motor Vehicle Code under Mich. Comp. Laws § 257.233a(3) and the Michigan Consumer Protection Act under Mich. Comp. Laws § 445.903(1)(a), (e), (s-u), (y), (bb), and (cc). On April 17, 2008, the jury awarded Plaintiffs $101,600 for actual damages resulting from the Michigan Motor Vehicle Code violations and $15,000 for actual damages stemming from the Michigan Consumer Protection Act infractions ("Jury Award"). The state court incorporated the Directed Verdict and Jury Award into its order entered on June 10, 2008, along with attorney fees and costs totaling $79,243.34 ("Trial Judgment")[1]. The state court awarded Plaintiffs additional attorney fees and costs in judgments on October 26, 2009, for $14,809.60 and November 13, 2009, for $12,564.17.

Defendant failed to make any payments on the judgments, and, on December 17, 2009, filed for Chapter 7 relief. On his Schedule F, Defendant only recognizes his judgment liability to Plaintiff Ronald DeCiero. Defendant identifies the amount of that debt as $193,000.00.

---

[1] In the judgment, the state court also awarded Plaintiffs statutory interest accruing from August 29, 2006, and $2,250.00 in expert witness fees.

Plaintiffs timely filed their nondischargeability action under Section 523(a)(2)(A) and (a)(6). On January 20, 2011, Plaintiffs filed their first motion for summary judgment (Docket No. 18) based upon the alleged collateral estoppel effect of the state court judgments and the merit of the underlying facts. Defendant responded on February 3, 2011, by filing a cross-motion for summary judgment based upon the same general collateral estoppel and "merit of the facts" arguments. At a hearing held on March 2, 2011, the Court denied both motions on the grounds that a genuine issue of material facts existed as to the specific issues argued during the state court proceedings.

On July 1, 2011, Plaintiffs filed their second motion for summary judgment founded upon essentially the same allegations averred in their first motion. This time, however, Plaintiffs included several hundreds of pages of transcripts from the prior state court proceedings with their motion. Defendant responded the same day by once again filing a cross-motion for summary judgment, and, as was the case in his first cross-motion, his alleged bases for summary judgment generally mirrors Plaintiffs'.[2] The Court now must find whether summary judgment is warranted for Plaintiffs or Defendant by determining: (1) whether the judgments rendered in the preceding state court litigation have an issue preclusive effect and necessarily satisfy the requirements of Section 523(a)(2)(A) and (a)(6); and, if not, (2) whether there is any genuine issue of material fact as to the merit of the underlying facts satisfying those same requirements.

---

[2]The only practical difference in the motions is that Defendant additionally claims that agency law does not render him liable for the acts of his brother, and that his own conduct does not constitute the culpability required for an action under Section 523(a)(2)(A) and (a)(6). Given that Plaintiffs do not distinguish between Defendant's and his brother's culpability, Defendant's agency defense in the setting of the current dispositive motions is misplaced and summarily denied.

Applicable Law

A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Federal Rule of Bankruptcy Procedure 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. A "genuine" issue is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

B.    Section 523(a)(2)(A) and (a)(6)

In the case of the present cross-motions, both Plaintiffs and Defendant seek summary judgment in Plaintiffs' Section 523(a)(2)(A) and (a)(6) action. Section 523(a)(2)(A) requires Plaintiffs to prove by a preponderance of the evidence that:

(1)    Defendant obtained money through a material misrepresentation that, at the time, he knew was false or made with gross recklessness as to its truth;
(2)    Defendant intended to deceive Plaintiffs;
(3)    Plaintiffs justifiably relied on Defendant's false representation; and
(4)    Plaintiffs' reliance was the proximate cause of their loss.

*See Nehasil v. Grenier (In re Grenier)*, 430 B.R. 446, 452 (E.D. Mich. 2010) (citing *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998) (citation and footnote omitted)); *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Section 523(a)(6) mandates that Plaintiffs prove by a preponderance of the evidence that Defendant "willfully" and "maliciously"

5

injured them. *Grogan*, 498 U.S. at 291. To establish that Defendant "willfully" injured them, they must show that Defendant either acted with an actual intent to cause their alleged injury or a belief that the alleged injury was substantially certain to result from his act. *See Phillips v. Weissert (In re Phillips)*, 434 B.R. 475, 483 (B.A.P. 6th Cir. 2010) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999)). In order to establish that Defendant "maliciously" injured them, Plaintiffs must show that Defendant acted in disregard of his duties or without just cause or excuse. *Phillips*, 434 B.R. at 483 (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

C. Collateral Estoppel

Plaintiffs and Defendant share the view that the judgments rendered in the prior state court litigation have a collateral estoppel effect in these bankruptcy proceedings. The difference is that Plaintiffs believe that the state judgments resolve all issues and necessarily satisfy the requirements of Section 523(a)(2)(A) and (a)(6), while Defendant maintains that the judgments resolve issues that necessarily preclude Plaintiffs' action under those sections of the Bankruptcy Code. Prior to analyzing the merit of the underlying facts, the Court must first determine whether it is precluded from doing so by the state court judgments, i.e., the Court must resolve whether the state court judgments have a collateral estoppel effect in these proceedings.

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). In *Livingston v. Transnation Title Insurance Co. (In re Livingston)*, 372 Fed. Appx. 613, 617 (6th Cir. 2010) (citations omitted), the Sixth Circuit Court of Appeals

6

confirmed that principles of collateral estoppel apply in Section 523(a) actions, and that state court judgments can have an issue preclusive effect in those proceedings. *See also Grogan*, 498 U.S. at 285 ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to Section 523(a)."). In *Livingston*, 372 Fed. Appx. at 617, the Sixth Circuit followed another bankruptcy court in this district in looking to Michigan law to determine whether a Michigan state court judgment has a preclusive effect. *See also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L.Ed.2d 56 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the [s]tate in which the judgment was rendered.").

Under Michigan law, collateral estoppel applies when:

1.) there is identity of parties across the proceedings;
2.) there was a valid, final judgment in the first proceeding;
3.) the same issue was actually litigated and necessarily determined in the first proceeding; and
4.) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Phillips*, 434 B.R. at 485 (citing *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002) (citations omitted)). Michigan law provides that "[c]ollateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally. The inability of a court to determine the basis for the prior court judgment is, by itself, enough to preclude the defense of collateral estoppel." *Livingston*, 372 Fed. Appx. at 618 (citing *People v. Gates*, 434 Mich. 146, 156-57, 452 N.W.2d 627, 631 (1990)) (internal quotation marks omitted).

<u>Analysis</u>

There are four final judgments deriving from the Michigan state court litigation that are relevant to Plaintiffs' nondischargeability action: the Summary Judgment; the Trial Judgment,

7

which incorporates the Directed Verdict and the Jury Award; and the October 26, 2009, and November 13, 2009, awards to Plaintiffs of additional attorney fees and costs. The October 26, 2009, and November 13, 2009, award of attorney fees and costs stem from the Trial Judgment and, therefore, are not determinative of whether an issue preclusive effect exists in Plaintiffs' Section 523(a)(2)(A) and (a)(6) action. These later two judgments will no longer be discussed in this Opinion.

The review of the Summary Judgment and the Trial Judgment separately shows that Michigan's four requirements for collateral estoppel are satisfied. The unavoidable problem to finding that issue preclusion arises from those judgments, however, resonates from the struggle to harmonize the actual findings of both judgments and their bases. This struggle extends to the analyses under Section 523(a)(2)(A) *and* (a)(6).

Plaintiffs presently bring their fraud action under Section 523(a)(2)(A) only after the state court dismissed their fraud suit under Michigan law. Per the Sixth Circuit, "[B]ankruptcy courts in Michigan have held uniformly that the elements of a fraud claim under Michigan law are identical to those necessary to determine non-dischargeability under 11 U.S.C. § 523(a)(2)(A)." *Livingston*, 372 Fed. Appx. at 618. Both require a plaintiff to allege an injury resulting from the alleged fraud. *See Rembert*, 141 F.3d at 281 (regarding elements of fraud under Section 523(a)(2)(A)); *Disner v. Westinghouse Electric Corp.*, 726 F.2d 1106, 1111 n.11 (6th Cir. 1984) (regarding elements of actionable fraud under Michigan law) (citations omitted). In the Summary Judgment, the state court unequivocally denied Plaintiffs' fraud count (Count I) due to its finding of "no admissible evidence that the [p]laintiffs . . . suffered a detriment." Inexplicably, however, the state court also rendered the Directed Verdict in favor of Plaintiffs under the Michigan

8

Consumer Protection Act due to Defendant's "failure to disclose [his] knowledge of the vehicle being damaged in a collision to plaintiffs." One of the sections that Defendant violated, Mich. Comp. Laws § 445.903(1)(bb), is clearly a "fraudulent misrepresentation" section. The Jury Award proceeded to indicate that Plaintiffs actually suffered $15,000 worth of "damages as a result of [d]efendants' violations of the Michigan Consumer Protection Act."[3] The Summary Judgment and the Trial Judgment appear to definitively find that Plaintiffs did not suffer, and then did suffer, an injury as a result of Defendant's alleged fraud.

Defendant's alleged fraud is the basis of Plaintiffs' action under Section 523(a)(6) as well. The difference under Section 523(a)(6), though, is that Plaintiffs claim the alleged fraud produced a willful and malicious injury. Leaving aside the discussion regarding the uncertainty of an injury, there is a portion of the Summary Judgment that also appears to conflict with the state court's finding that Defendant is liable for fraudulent misrepresentation under the Consumer Protection Act. Three counts dismissed by the Summary Judgment relate to Michigan's adoption of the Uniform Commercial Code ("UCC"). The state court denied those counts (Counts II, III, and VII), because of its finding that "[p]laintiffs . . . failed to present any admissible evidence raising a question of material fact that the [d]efendants failed their obligation of good faith." *See generally Gen. Motors Corp. v. Dept. of Treasury*, 466 Mich. 233, 240, 644 N.W.2d 734, 738 (2002) ("[E]very contract or duty . . . imposes an obligation of good faith in its performance or enforcement.") (citing Mich. Comp. Laws § 440.1203). Under Michigan's version of the UCC, "[G]ood faith . . . means honesty in fact and the observance of reasonable commercial standards

---

[3] The Trial Judgment incorporated those portions of the Directed Verdict and Jury Award.

9

of fair dealing in the trade." Mich. Comp. Laws § 440.2103. Once again, there is uncertainty in the interpretation of the state court judgments. On one hand, the state court ruled in the Summary Judgment that there existed no genuine issue of material fact that Defendant acted in good faith. On the other hand, the court also ruled in the Directed Verdict and Jury Award, as adopted and incorporated into the Trial Judgment, that Defendant is liable under the Michigan Consumer Protection Act for fraudulently misrepresenting the RV's history. It is, therefore, uncertain whether Defendant "willfully" and "maliciously" injured Plaintiffs.

These problematic portions of the Summary Judgment and Trial Judgment, along with possibly others not as immediately obvious, raise considerable doubt as to whether the state court judgments can fairly be recognized as having an issue preclusive effect in favor of Plaintiffs or Defendant. A clear, definite, and unequivocal basis for the judgments as presented is not evident. While the Court usually defers to state court judgments and has the utmost respect for Michigan's judiciary, this case is atypical because of the inconsistent judgments. This leaves the Court with the task of determining whether the multiple state court findings rendered at different stages of litigation have a collateral estoppel effect. Ultimately, the Court must simply determine whether the allowance of issue preclusion for Plaintiffs or Defendant would be equitable. The previously described struggles in attempting to harmonize the judgments make it abundantly clear that it would not be. The Court, therefore, finds that a collateral estoppel effect does not emanate from the state court judgments for purposes of this nondischargeability action.

Obvious genuine issues of material fact regarding Plaintiffs' and Defendant's relevant knowledge and conduct warrant the denial of summary judgment. For this reason, summary judgment is denied, so that the parties may proceed to a trial on the merit of the facts.

10

<u>Conclusion</u>

For the reasons stated in this Opinion, the Court finds that the judgments from the parties' previous state court litigation do not have a collateral estoppel effect in these bankruptcy proceedings, and that remaining genuine issues of material fact necessitate the denial of the parties' cross-motions for summary judgment. The Court has entered an Order consistent with this Opinion.

cc: Terry Adler

**Signed on December 20, 2011**

                                       **/s/ Daniel S. Opperman**
                                       **Daniel S. Opperman**
                                       **United States Bankruptcy Judge**