UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

      EARL E. KRUPP,                            Case No. 09-36710-dof
                                              Chapter 7 Proceeding
          Debtor.                       Hon. Daniel S. Opperman

_____/

RONALD A. DECIERO and
CATHERINE DECIERO,

          Plaintiffs,

v.                                             Adv. Pro. No. 10-3181-dof

EARL E. KRUPP,

          Defendant.

_____/

TRIAL OPINION

      The Plaintiffs, judgment creditors of the Debtor, seek a determination that this judgment is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6) for liability arising from the Defendant's sale of a defective motor home. Plaintiffs advance two bases for their nondischargeability action: (1) that the judgments rendered in previous state court litigation have an issue preclusive effect and necessarily satisfy the requirements of Section 523(a)(2)(A) and (a)(6); and (2) that the facts underlying the state court action necessarily satisfy those same requirements. The Plaintiffs and the Defendant previously filed cross-motions for summary judgment on both of those bases. The Court issued an opinion denying those cross-motions, deciding that it would be improper to recognize the state court judgments as having an issue

1

preclusive effect in these bankruptcy proceedings and finding that genuine issues of material fact remained for trial. The Court held a status conference on October 30, 2012, at which the parties advised the Court that, in lieu of presenting live testimony, the parties preferred to brief the outstanding issues and use the state court trial transcript as the basis for their arguments. The Court entered an Order Setting Deadlines and the parties filed their briefs. After carefully reviewing and weighing all of the evidence in the record, the Court concludes that the judgment debt owed by the Defendant to the Plaintiffs is a dischargeable debt and, therefore, the Plaintiffs' Complaint is dismissed.

## JURISDICTION

As the parties agree, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and, as such, is within the Court's jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

## FACTS AND PROCEDURAL HISTORY

On or about January 13, 2006, Plaintiffs, Ronald and Catherine DeCiero, purchased a recreational vehicle ("RV") for approximately $100,600.00 from Krupps Auto Sales via the Internet auction site, eBay. Krupps Auto Sales is located in Lennon, Michigan, and is owned by Earl Krupp, the Debtor in this case (Earl Krupp, individually and d/b/a Krupps Auto Sales, is hereafter identified as "Defendant"). The dealership is also the employer of the Defendant's brother, Fred Krupp, who is responsible for the operation of the business.

Fred Krupp testified that he purchased the RV from an insurance company auction sometime in 2004 and that he drove to Florida to pick up the RV from a wrecker service lot. Prior to his purchase of the RV, the RV had been involved a fatal collision. Fred Krupp testified that he knew that the RV had been involved in a collision and that he purchased the RV "as is" through an online sale by a broker hired by the insurance company. He testified that, when he

2

went to pick up the RV, its windshield was cracked and there was some damage to the front and side of the vehicle, and that he had to replace the windshield prior to driving the RV to Michigan. He testified that the RV did not have any mechanical issues during his trip from Florida to Michigan. Once he returned to Michigan, he did some cosmetic body repair work on the RV and repaired the damages to the bonnet. He eventually replaced the bonnet entirely. While attempting to market the RV for resale, Fred Krupp drove the RV to Orlando, Florida twice with his family. Prior to their trips, he placed an ad for the RV in the newspaper, and while the family was vacationing, he parked the RV at the Palms Hotel and would show the RV to potential customers. He testified that, during those trips, he did not have any mechanical issues with the RV. He eventually listed the RV for sale via an eBay auction, and, as noted, the Plaintiffs purchased the RV on January 13, 2006.

The Plaintiffs aver that they spoke to Fred Krupp before bidding on the RV and that he indicated that (1) he owned the RV for 2 years, (2) he drove the RV to Florida a few times, and (3) the RV had no mechanical issues and, other than a cracked windshield and a broken leveling jack, the RV had no issues apart from ordinary wear and tear. They aver that they purchased the RV with the understanding that the RV's only defects were faulty hydraulic jacks, a cracked windshield, and "normal wear and tear" and that neither Fred Krupp nor the Defendant disclosed the fact that the RV had been involved in a collision. The Plaintiffs drove to Michigan from their home in Massachusetts to pick up the RV, and, when they arrived, they did a walk-thru with Fred Krupp. Plaintiff Ronald Deciero testified that, when he saw the RV, everything looked fine. He testified that, during the walk-through, he noticed that the steps were not functioning properly and that the television would not turn on. He testified that he did not do an extensive investigation into the condition of the RV at that time because they needed to leave quickly to

avoid an incoming blizzard and that Fred Krupp told him that he would be entitled to a full refund if he was not happy with the RV. He testified that, upon further investigation during their drive back to Massachusetts and when they returned home, he and his wife noticed several other issues with the RV. The Plaintiffs claim that they did not learn of substantial defects in the vehicle, and the prior collision that caused them, until after they made their purchase. Plaintiff Ronald DeCiero testified that, after discovering additional issues with the RV and contacting the previous owner, Mr. Tripp, they learned that the RV was involved in a rollover collision that resulted in the death of one of its occupants and the declaration of its "total loss" by the vehicle's insurer.

The Defendant, to the contrary, argues that the Plaintiffs were fully aware prior to purchasing the RV that it had been in a collision. Fred Krupp testified that he told the Plaintiffs that the RV had been involved in a collision and that he specifically listed the RV as being sold "as is" in the eBay ad. Not only does the Defendant claim that his brother fully disclosed that the RV had been involved in a collision and the effects thereof, but he also advances the argument that the Plaintiffs' alleged lack of knowledge thereof is illogical. Per the Defendant, the RV's NADA (National Automobile Dealers Association) value exceeds $225,000, and Ronald DeCiero testified that he has experience in buying and selling over 100 vehicles. Plaintiff Ronald DeCiero testified that he performs almost all of the repairs to the vehicles he purchases prior to selling them. Accordingly, the Defendant argues that a person with such extensive experience would not purchase an RV from a dealership for approximately half-price without asking about, and investigating the reason for, the extraordinary low price.

Given the conflicting recitations of the facts and the refusal of the Defendant and his brother to refund the Plaintiffs' purchase money, the Plaintiffs sued the Defendant and his

brother on August 26, 2006, in the Genesee County Circuit Court on a number of legal theories relating to the sale and purchase of the RV. Although the state court complaint was not presented and all of its eight counts are not identified, the Court is aware that on August 28, 2007, the state court granted summary judgment in favor of the Defendant and his brother on six of the eight counts ("Summary Judgment"). The state court then proceeded to render a directed verdict in favor of the Plaintiffs in the jury trial conducted April 15-17, 2008, on the remaining two counts ("Directed Verdict"). Specifically, the state court found the Defendant and his brother liable for violating the Michigan Motor Vehicle Code under Mich. Comp. Laws § 257.233a(3) and the Michigan Consumer Protection Act under Mich. Comp. Laws § 445.903(1)(a), (e), (s-u), (y), (bb), and (cc). On April 17, 2008, the jury awarded the Plaintiffs $101,600 for actual damages resulting from the Michigan Motor Vehicle Code violations and $15,000 for actual damages stemming from the Michigan Consumer Protection Act infractions ("Jury Award"). The state court incorporated the Directed Verdict and Jury Award into its order entered on June 10, 2008, along with attorney fees and costs totaling $79,243.34 ("Trial Judgment")[1]. The state court awarded the Plaintiffs additional attorney fees and costs in judgments on October 26, 2009, for $14,809.60 and November 13, 2009, for $12,564.17.

The Defendant failed to make any payments on the judgments, and, on December 17, 2009, filed for Chapter 7 relief. On his Schedule F, the Defendant only recognizes his judgment liability to Plaintiff Ronald DeCiero. The Defendant identifies the amount of that debt as $193,000.00.

The Plaintiffs timely filed their nondischargeability action under Section 523(a)(2)(A) and (a)(6). On January 20, 2011, the Plaintiffs filed their first motion for summary judgment

---

[1] In the judgment, the state court also awarded Plaintiffs statutory interest accruing from August 29, 2006, and $2,250.00 in expert witness fees.

(Docket No. 18) based upon the alleged collateral estoppel effect of the state court judgments and the merit of the underlying facts. The Defendant responded on February 3, 2011, by filing a cross-motion for summary judgment based upon the same general collateral estoppel and "merit of the facts" arguments. At a hearing held on March 2, 2011, the Court denied both motions on the grounds that a genuine issue of material facts existed as to the specific issues argued during the state court proceedings.

On July 1, 2011, the Plaintiffs filed their second motion for summary judgment founded upon essentially the same allegations averred in their first motion. That time, however, the Plaintiffs included several hundreds of pages of transcripts from the prior state court proceedings with their motion. The Defendant responded the same day by once again filing a cross-motion for summary judgment, and, as was the case in his first cross-motion, his alleged bases for summary judgment generally mirrored the Plaintiffs'. As noted, the Court issued an opinion denying those cross-motions, deciding that it would be improper to recognize the state court judgments as having an issue preclusive effect in these bankruptcy proceedings and finding that genuine issues of material fact remained for trial. The Court held a status conference on October 30, 2012, at which the parties advised the Court that, in lieu of presenting live testimony, the parties preferred to brief the outstanding issues and use the state court trial transcript as the basis for their arguments. The Court entered an Order Setting Deadlines and the parties filed their briefs.

## DISCUSSION

### A. Application to Collateral Estoppel in this Proceeding

Despite the Court having issued an opinion on the Cross-Motions for Summary Judgment concluding that it could not recognize the state court judgments as having an issue preclusive

effect in these bankruptcy proceedings, the Plaintiffs argue that the Defendant is collaterally estopped from challenging the judgments because (1) only the state court final trial judgment is relevant for collateral estoppel purposes, and the state court judgment on the Defendant's motion for summary disposition does not constitute a final order for collateral estoppel purposes; and (2) the state court's ruling on the summary disposition motion was not based on a finding that there was no evidence of injury, but rather on the fact that the Plaintiffs' failed to present evidence in the proper form in a timely fashion.

The Court has already ruled on the collateral estoppel issue, which was raised by the Plaintiffs and the Defendant in their Cross-Motions for Summary Judgment. For the reasons stated in that Opinion, the Court once again concludes that it cannot recognize the state court judgments as having an issue preclusive effect in these bankruptcy proceedings.

## B. 11 U.S.C. § 523(a)(2)(A)

Under Section 727 of the Bankruptcy Code, a debtor may obtain a general discharge form all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud. 11 U.S.C. § 523(a)(2)(A).

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –

(2) for money, property,[1] services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

---

[1]The term "property" as used in Section 523(a)(2)(A) "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." *Gleason v. Thaw,* 236 U.S. 558 (1915).

To prevail on a claim under Section 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

In their brief, the Plaintiffs argued that the elements of 11 U.S.C. § 523(a)(2)(A) have been established based on the state court ruling finding the Defendant liable for violations of the Michigan Consumer Protection Act. The Court has already ruled that it cannot recognize the state court judgments as having an issue preclusive effect in these bankruptcy proceedings. The Plaintiff did not make substantive arguments regarding the Section 523(a)(2)(A) count other than the collateral estoppel argument. The Defendant argues that the Plaintiffs have failed to prove that (1) the Defendant made a false misrepresentation, (2) the Defendant knew that his statement was false, (3) the Defendant had the requisite intent to deceive, and (4) the Plaintiffs justifiably relied on any misrepresentation of the Defendant. The Defendant seems to argue that he cannot be held responsible for the actions and wrongdoing of his brother, Fred Krupp, and, because he did not have any communications with the Plaintiffs personally, the Plaintiffs' § 523(a)(2)(A) count must fail. The Plaintiffs argue that the Defendant is liable for the actions and wrongdoing of his brother for purposes of this nondischargeability proceeding because the Defendant is the principal of Krupp Auto Sales and his brother, Fred Krupp, was acting as an agent of Krupp Auto Sales during this transaction. The Court will address the agency issue later in this Opinion.

The first element the Plaintiffs must prove is that "the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth." Here, there is conflicting testimony regarding whether there were any misrepresentations made by Fred Krupp or the Defendant to the Plaintiffs. Plaintiff Ronald DeCiero testified that he spoke to Fred Krupp before bidding on the RV and that he indicated that (1) he owned the RV for 2 years, (2) he drove the RV to Florida a few times, and (3) the RV had no mechanical issues and, other than a cracked windshield and a broken leveling jack, the RV had no issues apart from ordinary wear and tear. The Plaintiffs aver that they purchased the RV with the understanding that the RV's only defects were faulty hydraulic jacks, a cracked windshield, and "normal wear and tear" and that neither Fred Krupp nor the Defendant disclosed the fact that the RV had been involved in a collision. To the contrary, Fred Krupp testified that he told the Plaintiffs that the RV had been involved in a collision and that he specifically listed the RV as being sold "as is" in the eBay ad. There is no evidence that Fred Krupp or the Defendant knew the details of that collision (that it was a rollover accident in which one of the RV's occupants died). Given this conflicting testimony and given the fact that the parties chose to have this court rely on the state court trial transcripts in lieu of submitting additional proofs in this case, the Court must find that the Plaintiffs have failed to establish by a preponderance of the evidence that Fred Krupp or the Defendant knowingly made any material misrepresentation to them.

The second element the Plaintiffs must prove is that the Defendant intended to deceive them. Intent, under *Rembert*, is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard*

*Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788, (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000)(citations omitted). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *McCoy,* 299 B.R. at 199.

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (in re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994).

Here, the Plaintiffs have failed to establish, by a preponderance of the evidence, that the Defendant or Fred Krupp had the requisite intent to deceive the Plaintiffs. Fred Krupp testified that he listed the RV for sale in the "as is" section of eBay and he specifically indicated that the RV was being sold "as is" in his ad. He further testified that he disclosed the fact that the RV had been in a previous collision. He did disclose several issues with the RV, including the

cracked windshield and the fact that the hydraulic jacks were not properly functioning. Fred Krupp testified that he did not attempt to cover up any of the cosmetic issues with the RV and Plaintiff Ronald DeCiero testified that most of the issues he discovered were not readily apparent until the certain components were taken apart. Given this conflicting testimony and given the fact that the parties chose to have this court rely on the state court trial transcripts in lieu of submitting additional proofs in this case, the Court must find that the Plaintiffs have failed to establish by a preponderance of the evidence that Fred Krupp or the Defendant intended to deceive the Plaintiffs.

The third element the Plaintiffs must prove is that "the creditor justifiably relied on the false representation." The Defendant argues that the Plaintiffs have failed to prove that they justifiably relied on any misrepresentations, if any, made by his brother. Specifically, the Defendant notes that (1) Plaintiff Ronald DeCiero has experience with buying and selling over 100 vehicles and he does 99% of the repairs to his vehicles on his own prior to selling them; (2) the Plaintiffs did not inspect the RV themselves, beyond a cursory walk-thru; (3) the Plaintiffs did not hire a professional to inspect or appraise the RV; and (4) given Plaintiff Ronald DeCiero's experience in buying and selling vehicles and the fact that the RV was listed for sale "as is," he should have investigated the reason for the purchase price being $106,000.00 when the value of that type of vehicle is usually well over $225,000.00. The Plaintiffs argue that this Court should not revisit the issue of reliance because the state court found that the Defendant violated the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903(1)(bb) and that the Plaintiffs did not have a duty to mitigate the damages to them by doing an independent inspection. As already discussed, the Court has concluded that the application of collateral estoppel is inappropriate in this case. Based on the record before it, the Court must conclude that

the Plaintiffs have failed to prove by a preponderance of the evidence that they justifiably relied on misrepresentations made by Fred Krupp or the Defendant.

Accordingly, the Section 523(a)(2)(A) count of the Plaintiffs' Complaint is dismissed.

### C.  11 U.S.C. § 523(a)(6)

The Plaintiffs argue that the violations of the Michigan Consumer Protection Act, specifically MCL 445.901(bb) and (cc), constitute fraud and that fraud was perpetrated both willfully and maliciously by the Defendant in violation of 11 U.S.C. § 523(a)(6).  The Defendant argues that the Plaintiff has failed to prove that the Defendant willfully and maliciously caused any injury to them.

Section 523(a)(6) authorizes a bankruptcy court to exclude a debtor from receiving a discharge "from any debt for willful and malicious injury by the debtor to another entity or the property of another entity."  The exceptions to discharge are to be narrowly construed in favor of the debtor.  *Monsanto Co., v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).  A party must prove by a preponderance of the evidence that a debtor committed an injury that is both willful and malicious.  *Grogan v. Garner*, 498 U.S. 279 (1991).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court discussed and determined the meaning of the language used in 11 U.S.C. § 523(a)(6).  The issue before the United States Supreme Court involved "whether a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct" fell within 11 U.S.C. § 523(a)(6).  *Id*. at

59.    The Kawaauhaus argued that the malpractice award fell within the Section 523(a)(6) exception because Dr. Geiger engaged in the intentional act of providing inadequate medical services which led to Mrs. Kawaauhau's injury.  *Id.* at 61.

In analyzing the parameters of the language "willful and malicious injury," the United States Supreme Court found that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the *consequences of an act,*" not simply *"the act itself."*

*Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The United States Supreme Court further determined that to adopt the interpretation proposed by the Kawaauhaus would:

> place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. . . .  A "knowing breach of contract" could also qualify.  A construction so broad would be incompatible with the 'well-known guide that exceptions to discharge "should be confined to those plainly expressed.'

*Id.* at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

More than a year later, the Sixth Circuit Court of Appeals considered the "willful and malicious injury" language contained in Section 523(a)(6), in *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999).  The Sixth Circuit Court of Appeals interpreted *Geiger* and noted that:

> [t]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury."  The Restatement

13

defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.

*Id*. at 464.

Based on the language used and analysis of the United States Supreme Court in *Geiger*, the *Markowitz* Court announced the standard of the Sixth Circuit Court of Appeals by holding that:

unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Id*. (quoting Restatement (Second) of Torts § 8A, at 15 (1964)); *see Kennedy v. Mustaine*, 249 F.3d 576, 580 (6th Cir. 2001).

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to prove either willful or malicious, the debt will be discharged. *Markowitz*, 190 F.3d at 463. Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such:

Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind. A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted).

The Plaintiffs argue that the Defendant was required by statute to surrender the title of the RV to the Michigan Secretary of State so that a branded salvage title could be issued for the RV and that the Defendant's failure to comply with that statute constitutes a fraud against the Plaintiffs. The Plaintiffs also argue that the Defendant was required to place mandated language in his advertisement for the RV noting that it was previously wrecked, destroyed, or damaged to the extent that a previous owner considered the vehicle uneconomical to repair and that his failure to do so constitutes a statutory fraud. The Plaintiffs argue that the Defendant willfully disregarded his duty to comply with those statutes, without just cause or excuse, in an attempt to realize more profit from the sale of the RV.

Here, the Plaintiffs have failed to establish, by a preponderance of the evidence, that the Defendant's actions constitute a willful and malicious injury to them. Here, there is conflicting testimony regarding whether the Defendant disclosed the fact that the RV had been in a collision. With regard to the state court's finding that the Defendant failed to surrender the title to the Michigan Secretary of State and failed to include the required language in the eBay advertisement, the Plaintiffs have failed to establish that those failures amount to a willful and malicious injury to them. To find malice requires a finding that the Defendant or Fred Krupp was conscious of his wrongdoing. The record before the Court suggests that Fred Krupp may not have intended any wrongdoing inasmuch as he apparently believed that the "as is" disclaimer in the eBay add sufficed under Michigan law to disclose the relevant, material information. Accordingly, the Section 523(a)(6) count in the Plaintiffs' Complaint is dismissed.

### D.  Application of Agency Doctrine

It seems to be undisputed that Fred Krupp was acting as an agent of Krupp Auto Sales during this transaction.  The Plaintiffs argue that the Defendant is liable for his brother's statements and nondisclosures on account of that agency relationship.  Because the Court has concluded that the Plaintiffs failed to prove the Sections 523(a)(2)(A) and (a)(6) counts on the record before the Court, it is unnecessary for the Court to discuss whether the Fred Krupp's actions can be imputed to the Defendant for nondischargeability determination purposes.

### CONCLUSION

For the reasons stated in this Opinion, the Court holds that the Plaintiffs did not meet their burden to prove that their alleged debts are nondischargeable under Sections 523(a)(2)(A) and (a)(6).  Accordingly, Plaintiff's complaint is dismissed.  Counsel for the Defendant shall prepare and present an appropriate order consistent with this Opinion.

.

**Signed on April 11, 2013**

**/s/ Daniel S. Opperman**
**Daniel S. Opperman**
**United States Bankruptcy Judge**
